SHIREY et al., Appellants,

v.

BEAL, Appellee.

[Cite as *Shirey v. Beal* (1997), 118 Ohio App.3d 678.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960585.

Decided March 12, 1997.

*Fay D. Dupuis,* City Solicitor, and *Roshani De Soyza Hardin,* Assistant City Solicitor, for appellants.

*Hardin & Hill* and *Donald E. Hardin,* for appellee.

PAINTER, Judge.

This case is about the dismissal of defendant-appellee David A. Beal from the Cincinnati Police Division ("Police Division").

The undisputed portion of the record establishes that while Officer Beal entered the Hamilton County Juvenile Detention Center with a prisoner, he heard insulting comments from two prisoners, Victor Murrell and Terrell Robinson, who were being detained in a holding room that could not be opened from the inside, but could be entered from the outside. After delivering his prisoner, Officer Beal entered the holding room where Murrell and Robinson were located, and a confrontation ensued.

The plaintiffs-appellants, the city of Cincinnati and others (collectively, the "city"), asserted that after Beal entered the holding room, Beal escalated his confrontation with Murrell until it culminated with Beal choking Murrell. Beal compounded his alleged indiscretion by failing to report his use of choking force to his supervisor as required by the Police Division regulations.

Officer Beal admitted that a confrontation occurred, and that he used "restraining force" on Murrell, but stated that he did not choke or cause any injuries to Murrell, and therefore, in his opinion, no report was required.

Murrell, Robinson, Tina Afriyie, an admissions officer at the detention center, and Sandra Lee Woods, a nurse practitioner at the detention center, each testified consistently with the city's allegations. Only Officer Beal testified differently.

After an internal investigation of this incident by the Police Division, City Manager John F. Shirey dismissed Officer Beal for failure of good behavior and dishonesty. Beal appealed to the civil service commission ("CSC"). After a hearing, which included the above testimony, the CSC found that Officer Beal's entry into Murrell's holding room "was totally inappropriate and exhibited bad judgment." The CSC further found that Officer Beal failed to report the incident to his supervisor and failed to follow Sections 1.01, 1.02, and 1.51 of the regulations of the Police Division, and that the Police Division had disciplined Officer Beal on five previous occasions. Based on these findings, the CSC affirmed Beal's dismissal.

Beal appealed to the court of common pleas for *de novo* review pursuant to R.C. 124.34.[1] At trial, the city was required to prove the dismissal charges—that Beal failed to follow Sections 1.01, 1.02, and 1.51 of the regulations of the Police Division—by a preponderance of the evidence. *Chupka v. Saunders* (1986), 28 Ohio St.3d 325, 28 OBR 393, 504 N.E.2d 9; *Beyersdoerfer v. Shocket* (1994), 93 Ohio App.3d 647, 639 N.E.2d 818.

Even though the case was before the trial court *de novo*, the trial court did not take any new evidence and instead examined the record created during the CSC

---

1. See R.C. 119.12 for the appeal procedure.

hearing, without seeing any of the witnesses or hearing the inflection in their voices. This impediment to the trial court's factfinding did not deter it from reversing the CSC decision and reinstating Officer Beal.

The CSC has appealed to this court. In its sole assignment of error, the CSC asserts that the trial court erred when it held that the CSC decision to discharge Beal was not supported by a preponderance of the evidence. We agree with the CSC and sustain this assignment of error.

Our review is limited to whether the trial court's decision that the city failed to prove by a preponderance of the evidence that Beal violated the cited regulations of the Police Division is supported by competent, credible evidence. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.[2]

The pertinent sections of the regulations of the Police Division are as follows. Section 1.01 states:

"Members shall conduct themselves at all times in such a manner as to reflect most favorably on the Division. Conduct unbecoming a member shall include that which tends to bring the Division into disrepute or tends to reflect discredit upon the member as a representative of the Division, or that which tends to impair the operation or efficiency of the Division or its members. Such offenses need not be specifically defined or set forth in this manual."

Section 1.02 states:

"Members shall not commit any acts or omit any acts which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Division."

The procedure that Officer Beal allegedly violated was Procedure 12.545, which states:

"When an officer has a right to make an arrest, he may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more: he must avoid using unnecessary violence.

"The courts could consider a choke hold or other similar type hold as deadly force. Choke holds should only be used with this in mind.

" * * *

---

**2.** In cases such as this where the trial court takes no additional evidence, this limitation makes less sense—the trial court reviews the record created at the administrative hearing and affords no deference to the factfinding body that created that record, then we examine the same record to determine whether the trial court's decision was against the manifest weight of the evidence.

"Whenever employees use deadly force, restraining force with injury, chemical irritant, or taser, or have knowledge of a use of force, they will immediately notify a supervisor."

Section 1.51 states:

"Members shall not use more force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with law and Division procedure."

Murrell stated that he was choked by Beal. Terrell Robinson, a fellow prisoner in the same room at the time of the incident, corroborated Murrell's story. Beal denied the story and claimed that he used "restraining force" in self-defense against a perceived threat.

The trial court discounted Murrell's testimony as "unconvincing" because his testimony "conflicts with that of the other witnesses. * * * The most glaring of these is whether Beal had one or both hands around [Murrell's] neck * * * ." Similarly, the trial court discounted Robinson's testimony, because Robinson testified that Tina Afriyie, an admissions officer at the detention center, "had to pull Beal off Murrell," contrary to Afriyie's testimony that Beal complied with her request to release Murrell.

The obvious problem with discounting all of Murrell's and Robinson's testimony due to these inconsistencies is that, at a minimum, Beal entered a holding room that was locked from the inside and *initiated* the confrontation with Murrell, and then had at least one hand on Murrell's neck until Afriyie requested that Beal release Murrell. Even if Beal is given every benefit of these inconsistencies, it remains clear that he violated the regulations of the Police Division.

More illuminating is the testimony of two disinterested witnesses. Afriyie testified:

"A: * * * Okay. So I walked past the door and I come back and by this time, Victor's back is up against the wall and the officer is kind of leaned into him, you know, he's got his neck kind of up like this (indicating), up against the wall.

"Q: You're demonstrating that, but can you describe where the officer's hand was on Mr. Murrell?

"A: Well, it was on his neck with a kind of like, upward motion kind of like.

"Q: And was Victor's head looking straight ahead or was it at an angle?

"A: It was kind of back up like that (indicating).

"Q: Okay, you're indicating a 25 degree angle.

"A: Tilted, you know, tilted backwards, you know, as if to hold him against the wall or something.

"Q: All right. What happened then?

"A: Okay. With my left hand, I banged on the window, because it's kinda like a window there so you can see what's going on. So I banged on the window and I said, 'You can't do that in here,' and then I entered the room and asked the officer if he would just step out, if he would leave the room, you know."

Amazingly, the trial court found that Afriyie's testimony supported Beal's assertion that he grabbed Murrell's collar—rather than his neck—at least as well as the testimony supported the city's assertion that Beal choked Murrell—despite her statement that Beal's hand was on Murrell's neck.

Sandra Lee Woods, a nurse practitioner at the detention center, examined Murrell shortly after the incident because Murrell was so agitated that he beat on the screen to the window of the holding room until his fingers began to bleed and it became apparent that he required medical attention. Woods testified:

"Q: Okay. What if anything did you observe?

"A: He [Murrell] was really agitated, was very angry. His hands were hurt and he told me that he had, he told me he had either hit the wall or he was shoved against the wall and I honestly can't remember which, but his hands indicated that injuries had been sustained.

"Q: Did he have abrasions on his hands?

"A: Yes.

"Q: Okay.

"A: And then he said a police officer choked him. Well, what I found was absolutely consistent with what he said.

"Q: Okay. And what did you find?

"A: There were marks around his neck, the kind that I would imagine, could very easily be made by someone who was applying pressure around someone's neck with the force of their hands.

"Q: What color were these marks?

"A: Red, and, and there were welts. Those areas were swollen from the trauma."

Woods further testified that she had seen Murrell within approximately an hour of the incident.

The trial court discounted Woods's testimony, finding that her statements at the CSC hearing were inconsistent with responses before the Police Internal

Investigation Section ("Internal Investigation"), because Woods told Internal Investigation that "there is no evidence of real physical trauma that needed immediate attention." We are left to wonder at the trial court's reasoning. Woods's testimony is absolutely consistent: Beal failed to choke Murrell hard enough to cause physical trauma that required immediate medical attention.

From our review of the record, the testimony of Murrell, Robinson, Afriyie and Woods stands against that of Officer Beal. It is abundantly clear that Beal choked Murrell. Whether he used one hand or two, whether Afriyie had to pull Beal off Murrell or merely ask him to leave, whether Beal choked Murrell hard enough to cause red marks and welts rather than strangling him hard enough to require immediate medical attention, he doubtless choked Murrell and failed to report the incident. Such actions violate the regulations of the Police Division.

Therefore, as there is not competent credible evidence supporting the trial court's decision, we hold that the trial court's decision is against the manifest weight of the evidence and sustain the city's assignment of error.

Accordingly, we reverse the judgment of the trial court and remand the cause for an entry affirming the CSC decision.

*Judgment reversed.*

MARIANNA BROWN BETTMAN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.