**OHIO VETERINARY MEDICAL BOARD, Appellee,**

**v.**

**SINGH, Appellant.**

[Cite as *Ohio Veterinary Med. Bd. v. Singh* (1998), 127 Ohio App.3d 23.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970432.

Decided March 27, 1998.

*Betty D. Montgomery,* Attorney General, *Jody A. Flynn* and *Barbara Servé,* Assistant Attorneys General, for appellee.

*Gary B. Garson* and *Paul W. Flowers,* for appellant.

PAINTER, Judge.

Defendant–appellant Harjinder Singh, a veterinarian, appeals from the trial court's order sustaining the Ohio Veterinary Medical Board's determination that he violated R.C. 4741.22(Y) by refusing to permit a veterinary board investigator to inspect his business premises during regular business hours. This saga unfolded after Dr. Singh castrated a cat named Buster in 1991.

After Singh neutered Buster, the cat experienced complications, such as swelling in the genital area and a blockage in the urinary tract, during the next few days. Buster was treated by another veterinarian and recovered from the complications. Buster's owner, Karen Bicknell, filed a complaint against Singh with the board almost a year after the complications developed. Approximately a year after Bicknell filed the complaint, the board notified Singh. Singh wrote to the board, expressing surprise and detailing the care and treatment he gave Buster. A few months later, the board subpoenaed Singh's records pertaining to

Buster's treatment. Singh complied. The board then assigned the complaint to its sole investigator, James Thompson.

For well over a year, no action was taken on the complaint. In the meantime, Singh filed a federal lawsuit against the board, the individual board members, and Thompson, alleging discrimination and harassment based on his national origin. This lawsuit was based on matters other than what is at issue in this appeal. A little more than a month after the lawsuit was filed, on January 3, 1995, Thompson appeared at Singh's office. Thompson stated that he wanted to investigate the Bicknell complaint and to check whether Singh was complying with his thirty-day license suspension, which was imposed by the board for a matter unrelated to this appeal. On that day, Singh was not at his office, and Thompson confirmed that Singh was complying with his suspension.

Two days later, on January 5, 1995, Thompson again appeared at Singh's office to investigate the Bicknell complaint and to check whether Singh was complying with his suspension. Thompson was confused about the timing of Singh's reinstatement, because Singh's suspension had actually ended the day before, on January 4. So Singh was in a back room of his office when Thompson arrived.

When he entered Singh's office, Thompson demanded to speak with Singh and to see his files pertaining to the Bicknell complaint. Singh's wife and Dr. Sinah, another veterinarian in the office, told Thompson that Singh's attorney had advised him not to speak with Thompson or to provide him with the records. Thompson left the premises. Two weeks later, Singh received an undated letter from the board authorizing Thompson to investigate a complaint. On February 2, 1995, Thompson again went to Singh's office. Singh was not there, and his wife told Thompson that the records were at their lawyer's office.

The board then charged Singh with violating R.C. 4741.22(A) and (R) for failing to abide by rules governing the proper treatment of animals and for gross incompetence, and with departing from the minimum standards of care under Ohio Adm.Code 4741–1–03. Both of these charges grew out of the Bicknell complaint concerning Buster's surgery. Additionally, the board charged Singh with refusing to permit Thompson to inspect his business premises under R.C. 4741.22(Y).

After a hearing, the board-appointed hearing examiner concluded that Singh's use of dimethyl sulfoxide, more commonly known as "DMSO," fell below the minimum standards of care for veterinarians under R.C. 4741.22(A) and Ohio Adm.Code 4741–1–03(B). He held, though, that there was no evidence of gross incompetence under R.C. 4741.22(R) and dismissed that charge. The examiner further determined that Singh had refused to allow Thompson to inspect his business premises on January 5, 1995, in violation of R.C. 4741.22(Y). Singh filed objections to the examiner's report. The board adopted the examiner's report

and recommended penalties: a sixty–day veterinary license suspension, a $500 fine, and costs of $1,086.70.

Singh appealed the board's order to the Hamilton County Court of Common Pleas. The trial court determined that the charges relating to Buster regarding violations of minimum standards of care, R.C. 4741.22(A) and Ohio Adm.Code 4741–1–03, were not supported by reliable, probative, and substantial evidence, and dismissed them. But the trial court upheld the board's finding that Singh had violated R.C. 4741.22(Y) by refusing to allow Thompson to inspect his business premises. The trial court then ordered the case back to the board for a recalculation of the appropriate discipline.

Singh now brings three assignments of error from the trial court's decision that he violated R.C. 4741.22(Y). The board, however, has not appealed the trial court's dismissal of the charges pertaining to Singh's alleged violations of the minimum standard of care for animals. In his first assignment, Singh contends that the trial court's decision upholding the board's finding of a violation of R.C. 4741.22(Y) was not supported by reliable, probative, and substantial evidence. We must disagree.

In examining the first assignment, we must first determine our standard of review. In an administrative appeal under R.C. 119.12, a trial court must determine whether the decision by the administrative board or agency was supported by reliable, probative, and substantial evidence in the record.[1] The trial court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative board or agency.[2]

In *Pons v. Ohio State Med. Bd.*, the Ohio Supreme Court explained the appellate court's standard of review in an appeal from a medical board's order: "The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion * * *."[3] We are uncertain why our standard of review is more limited than that of the trial court. The trial court has taken no new evidence and has merely looked at the record of the case—just as we do

1. See *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748; *Slone v. Ohio Bd. of Embalmers* (1997), 123 Ohio App.3d 545, 704 N.E.2d 633.

2. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265.

3. *Pons, supra*, at 621, 614 N.E.2d at 750–751; *Zarins v. Willis* (Feb. 10, 1998), Franklin App. No. 97APE07–920, unreported, 1998 WL 63535; *Ohio Veterinary Med. Bd. v. Singh* (Apr. 20, 1994), Hamilton App. Nos. C–930062 and C–9202713, unreported, 1994 WL 158914.

now. We can find no support for that position in R.C. 119.12. We can see no reason for the added deference to the trial court's decision in these instances.[4] We also note that the Ohio Supreme Court has stated that a different standard applies in unemployment compensation cases.[5] But we are forced to follow the Ohio Supreme Court's pronouncement in *Pons* and thus must review Singh's assignment under an abuse-of-discretion standard.

This abuse-of-discretion standard, however, applies only to factual issues. We review issues of law *de novo*.[6]

■ Applying this standard to Singh's first assignment, we are constrained to hold that the trial court did not abuse its discretion by upholding the board's order pertaining to R.C. 4741.22(Y). From the facts in the record, it is clear that during his investigation, Thompson wanted only to check Buster's original records. Singh's main contention seems to be that an inspection of the business premises under R.C. 4741.22(Y) does not contemplate the inspection of a veterinarian's records—and therefore that Singh did not refuse to allow Thompson to inspect his business premises. Singh contends that the purpose of a business-premises inspection under R.C. 4741.22(Y) is to check the facility for safety, sanitary conditions, and compliance with other applicable standards, and not to examine records. In support of this, Singh points to R.C. 4741.03(D)(1), which allows the board to subpoena the records that it desires to examine. Because there is no Ohio case law germane to the present dispute for guidance, we would be inclined to agree with Singh but for R.C. 4741.03(D)(2), not mentioned by either party to this appeal.

■ R.C. 4741.03(D)(2) states that the board may "[e]xamine and inspect books, papers, public records, animal patient records, and other documentary evidence at the location where the books, papers, records, and other evidence are normally stored or maintained." Thus, under the dictates of this statute, the board had the absolute right to examine Buster's records at Singh's office pursuant to an investigation. Because the board had directed Thompson to "conduct an investigation and/or compliance inspection of [Singh's] facility rela-

---

4. See, *e.g., John O. Clay Exploration v. Lawrence Twp. Bd. of Zoning Appeals* (1995), 108 Ohio App.3d 164, 670 N.E.2d 483; *Shirey v. Beal* (1997), 118 Ohio App.3d 678, 693 N.E.2d 1146.

5. See *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207.

6. See *Univ. of Cincinnati College of Med. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835; *In re Raymundo* (1990), 67 Ohio App.3d 262, 586 N.E.2d 1149; *Star Cruises of Cincinnati, Inc. v. Ohio Dept. of Liquor Control* (Mar. 20, 1996), Hamilton App. No. C–950701, unreported, 1996 WL 122649; *FOE Aerie 0582 Twin City v. Ohio Liquor Control Comm.* (Sept. 2, 1997), Franklin App. No. 97APE03–339, unreported, 1997 WL 559475.

tive to a complaint filed with this office," Thompson had the authority to inspect the records during his investigation of Singh's office.

Singh makes two further arguments. First, he asserts that Thompson did not provide him with proper notice of the investigation as required by R.C. 4741.26(A). We first must distinguish between an inspection and an investigation under R.C. Chapter 4741. We interpret R.C. 4741.26(A) to allow the board to conduct an inspection of a veterinarian's place of business during normal business hours after giving five days' written notice. However, under R.C. 4741.26(A), "[i]n conducting any investigation for a suspected violation of this chapter, the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation." This section further requires the board's investigator to provide a copy of the written authorization for an investigation to the subject of the investigation at the time it takes place.

The intent of the statute seems clear. The board, in discharging its duties, needs to supervise veterinarians by conducting inspections and investigations. At least five days' notice is given to veterinarians before an inspection takes place. Obviously, the board would use inspections for routine checks of a veterinarian's facilities. But when a written complaint is filed with the board, it is allowed to investigate the complaint with notice given contemporaneously with the investigation. The element of surprise is obviously an important factor in conducting investigations to determine whether a veterinarian has violated a provision in R.C. Chapter 4741.

As noted earlier, on January 5, Thompson came to Singh's office to investigate a complaint filed with the board. Singh alleges that Thompson did not have the authorization required by R.C. 4741.26(A) with him when he arrived to investigate on that day. Thompson did not leave the authorization at Singh's office before he left; it was mailed, undated, to Singh two weeks later. Though there is evidence in the hearing transcript that may support Singh's contention that Thompson did not in fact have the authorization with him that day, Thompson stated that he had sent notice to Singh before January 3, when he first visited Singh's office. Thompson also stated that he had the authorization with him on January 3. Thompson was never directly asked whether he had the authorization with him on January 5. But, apparently, the hearing examiner, the board, and the trial court all believed that he had the notice with him on January 5, because they agreed that Singh violated R.C. 4741.22(Y). We are limited by our standard of review and cannot take issue with the credibility of the witnesses. Thus, for our purposes, we must accept that Thompson had the proper authorization with him on January 5 to enable him to investigate Singh's records.

Singh's second argument is that there is no reliable, probative, and substantial evidence that *he* refused to permit Thompson to inspect his records. Singh asserts that because his wife and Dr. Sinah told Thompson that he could not see the records, Singh could not have violated the statute. But Singh's wife and Dr. Sinah certainly could have been acting as his agents in denying Thompson permission to inspect. As the trial court noted, Singh could be held accountable for the actions of his agents. Singh even testified that he knew that Thompson was at his office while he was in the back room. From the evidence in the record, the obvious implication is that Singh authorized his wife and Dr. Sinah to deny Thompson access to the records. The trial court did not err in determining that reliable, probative, and substantial evidence existed that Singh violated R.C. 4741.22(Y). The first assignment is therefore overruled.

In Singh's second assignment, he asserts that the trial court erred by holding that a portion of the board's final order complied with the requirements of due process and a fair hearing. This assignment is not well taken.

Essentially, Singh contends that the hearing officer's findings of fact in his report and recommendation were skewed and therefore violated his rights to due process, because the board could not make an informed decision. We, however, believe that the hearing officer's report was fairly accurate, and that the board's review of this report comported with Singh's due-process rights.[7] Singh was also permitted under R.C. 119.09 to file objections to the hearing officer's report with the board, which he did. The second assignment is overruled.

In his third assignment, Singh contends that the trial court erred by refusing to grant his motion for reconsideration. In this assignment, Singh claims that the board violated its duty to transmit a complete record under R.C. 119.12, because three pages were missing from the transcript of the hearing. This assignment is without merit.

██ A motion for reconsideration of a final judgment is a nullity in Ohio.[8] Singh's motion for reconsideration was filed after the trial court's written decision but before the trial court put on the judgment entry disposing of the case. The

**7.** See *Lies v. Ohio Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 2 OBR 223, 441 N.E.2d 584; *Chapman v. Ohio State Dental Bd.* (1986), 33 Ohio App.3d 324, 515 N.E.2d 992; *McCall v. Ohio State Racing Comm.* (Dec. 14, 1993), Franklin App. No. 93APE09–1216, unreported, 1993 WL 524900.

**8.** *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105; *Easley v. Alltronics, Inc.* (Oct. 1, 1997), Summit App. Nos. 18200 and 18201, unreported, 1997 WL 625479.

trial court did not rule on the motion. The trial court could have ruled on the motion before entering judgment, but its failure to do so rendered the motion a nullity.[9] Thus, the trial court did not err by failing to grant the motion for reconsideration because it became a nullity.

But even if we were to entertain the third assignment, Singh has not demonstrated that the absence of the three pages was prejudicial to him.[10] Singh notes that one of the missing pages gives greater details of the federal lawsuit against the board and Thompson. But Singh has not alleged a defense based on the federal lawsuit. The question on appeal to the court of common pleas was merely whether Singh had refused to permit Thompson to inspect his business premises. Therefore, the omission of some of the federal lawsuit's details from the transcript did not prejudice Singh. The third assignment is overruled.

Though we must uphold the trial court's decision, we are troubled by the charges against Singh, and, although not addressed specifically on appeal, by the implication of the federal lawsuit filed by Singh against the board and Thompson in November 1994. In our view, because of this history, Singh was not inordinately uncooperative when Thompson came to his office on January 5, 1995, to investigate a complaint filed more than two years earlier. Singh had been advised by his lawyer not to talk with Thompson or the board members, who were all defendants in Singh's federal lawsuit. During the hearing, Singh's lawyer noted that the investigation of the Bicknell complaint came from nowhere in 1995; he had not expected such a belated investigation and therefore had not attempted to obtain a stay in federal court to keep Thompson or the board from conducting an inspection. It is unfortunate that the parties were unable to cooperate regarding the supposed issue—the Bicknell complaint—but perhaps that is now part of the federal case.

Constrained by our limited standard of review, we must uphold the trial court's decision. The judgment of the trial court, remanding the case to the Ohio Veterinary Medical Board so that it may recalculate the appropriate discipline, is affirmed. Given that the major charges against Singh have been dismissed by the trial court, we would expect that the remaining finding of lack of uncoopera-

---

9. See *O'Brien v. Sutherland Bldg. Prods., Inc.* (Mar. 24, 1994), Franklin App. No. 93AP–948, unreported, 1994 WL 97216; *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (Dec. 22, 1992), Franklin App. No. 92AP–1308, unreported, 1992 WL 385908; *Cook v. Christman* (Apr. 8, 1988), Montgomery App. No. 10602, unreported, 1988 WL 37500.

10. See *Lorms v. State* (1976), 48 Ohio St.2d 153, 2 O.O.3d 336, 357 N.E.2d 1067, syllabus; *LOOM Lodge 0472 Conneaut v. Ohio Liquor Control Comm.* (Dec. 13, 1996), Ashtabula App. No. 95–A–0074, unreported, 1996 WL 757523.

tion, considering the facts and circumstances here, would result in a major downward revision of disciplinary sanction, if any at all is imposed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and MARIANNA BROWN BETTMAN, J., concur.